United States District Court
Southern District of Texas
**ENTERED**
December 09, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 4:02-CR-616-1 |
| | § | |
| DAVID LEON LYLE, | § | |
| *Defendant.* | § | |

# ORDER

David Leon Lyle ("Lyle"), a federal prison inmate, asks the Court to grant either his Motion for a Reduction in Sentence Pursuant to the First Step Act and Appointment of Counsel (Doc. No. 112) or his Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1) and the First Step Act of 2018 (Doc. No. 113). He has also filed a separate motion for the appointment of an attorney. (Doc. No. 121). The Government has opposed both motions. (Doc. Nos. 123, 124). The Defendant has filed a Reply. (Doc. No. 128).

**I.   Background**

Lyle was convicted, at trial, of four counts of bank robbery (18 U.S.C. §§ 2113 (a); (d)) and four counts of violating 18 U.S.C. § 924(c) by using, brandishing, and/or discharging a firearm during a crime of violence (namely, the four bank robberies).[1] Each of these firearm counts involved the brandishing or discharge of a firearm and, therefore, carried mandatory minimum consecutive sentences of 7 and 10 years' imprisonment, respectively. *See* 18 U.S.C. § 924(c)(1)(A)(ii) and (iii). Nevertheless, because Lyle was convicted of four separate violations of § 924(c), all but one of the firearm counts constituted a "second or subsequent conviction under" § 924(c) and the mandatory minimum consecutive sentences for each of those firearm

---

[1] The Court paraphrases the facts as set out in the Government's briefing.

counts increased to 25 years' imprisonment. 18 U.S.C. § 924(c)(1)(C); *Deal v. United States*, 508 U.S. 129 (1993). The undersigned's predecessor sentenced Lyle to 121 months' imprisonment as to each of his four bank robbery convictions, to run concurrently with one another. The Court also imposed a ten-year, mandatory-minimum, consecutive sentence as to Lyle's first § 924(c) conviction and 25-year, mandatory-minimum, consecutive sentences as to each of Lyle's three remaining § 924(c) convictions. Lyle's sentence thus totaled 1,141 months' imprisonment. While obviously severe, this sentence was totally compliant with and dictated by the law at the time it was imposed.

## II.    Retroactive Application of Amendments to § 924(c)

Lyle seeks relief on two different fronts. He seeks relief based upon the portions of the First Step Act which reduced the severity of stacking multiple convictions. This Court has already discussed and denied this relief as a matter of right in its ruling on Lyle's successive § 2255 motion. Consequently, this Court will not discuss those aspects again in detail. Nevertheless, to summarize, when Lyle was sentenced for these armed robberies, § 924(c) required a mandatory 25-year sentence for each additional § 924(c) violation due to the statute's provision for second and subsequent convictions *regardless of when they occurred*. The 2018 First Step Act changed the treatment given to second or subsequent § 924(c) violations. After that change, the higher 25-year mandatory sentence applies only to a repeat offender who violates § 924(c) *after a prior conviction has become final*. § 403, 132 Stat. at 5222. This is the thrust of Lyle's motion. Had that been the law in 2003 when he was sentenced, absent an upward departure, his sentence would have been significantly shorter. He requests that this Court retroactively apply this change to his sentence.

The Government's response to that request is that the retroactive application is not warranted or authorized. It argues that this change does not apply retroactively. *United States v. Gomez*, 960 F.3d 173, 176–77 (5th Cir. 2020). The default rule for any criminal statutory amendment is that any reduced penalties only apply to offenses committed *after* the statute is enacted. *Dorsey v. United States*, 567 U.S. 260, 272–73 (2012); 1 U.S.C. § 109. The controlling statute, 1 U.S.C. § 109, provides: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

With respect to the change to section 924(c) adopted in the First Step Act, Congress stated this intent explicitly, providing in section 403(b): "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b). The Government contends, given that Lyle was sentenced before December 21, 2018, section 403 does not apply in this case, and Lyle's sentence should remain intact. According to the Government every court to address this issue agrees. *See, e.g., United States v. Melvin*, 777 F. App'x 652 (4th Cir. 2019) (unpublished); *United States v. Gordon*, 2019 U.S. App. LEXIS 25044 (6th Cir. 2019) (unpublished); *United States v. Hunt*, 793 F. App'x 764, 2019 WL 5700734 (10th Cir. 2019) (unpublished); *In re Green*, 2019 U.S. App. LEXIS 7268 (11th Cir. 2019) (denying motion to file successive 2255 petition); *see also United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019) (holding that, under the identical language of section 401(c) of the First Step Act concerning amendments to 21 U.S.C. § 841(b)(1), those amendments

do not apply to a person sentenced before adoption of the Act). The First Step Act's date of enactment is December 21, 2018. 132 Stat. at 5194.

Lyle was sentenced well before December 21, 2018, so the amendments and § 924(c) found in the First Step Act do not apply. His request based upon retroactive application is denied.

### III. Compassionate Release/Relief

Lyle's second motion also relies on the First Step Act, but upon a different section. His argument, while still based upon the change in the law, is more indirect. Lyle seeks compassionate release or relief under 18 U.S.C. § 3582(c)(1)(A)(i), which permits a court to reduce a sentence upon a showing of "extraordinary and compelling circumstances." Lyle asserts that his sentence is more than twice what it would be had it been imposed under the current law and this circumstance, in and of itself, presents the Court with an extraordinary circumstance, which opens the door for the Court to reduce his sentence for the 924(c) counts. Lyle, in effect, is seeking retroactive application of § 403 of the First Step Act of 2018, that reduced the penalty for multiple 924(c) violations committed by an offender who had not previously incurred a 924(c) conviction, not as a right to retroactive application, but as an exercise of this Court's discretion under the current interpretations of the First Step Act.

The Government claims that, in asking to reduce his sentence, Lyle actually seeks a better result than retroactive application, given that, under the First Step Act, Lyle would still face a mandatory sentence of 31 years for his 924(c) convictions, plus the sentence for the actual bank robberies. Moreover, it argues, as above, that the determination of retroactivity of a statutory provision is made by Congress. *See Dorsey*, 567 at 274. As stated above, in the ordinary course, it is presumed that a change to criminal penalties does not apply retroactively, unless Congress provides otherwise. *Id.* at 272.

4

Lyle's alternative argument takes a somewhat different tack than strict retroactive application. He contends that the compassionate release authority of section 3582(c)(1)(A)(i) authorizes what section 403 of the First Step Act did not. As recently amended by the First Step Act, section 3582(c)(1)(A)(i) provides:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

In section 603(b) of the First Step Act Congress added the italicized passage that permits a defendant, after denial of a request to the Bureau of Prisons (BOP) that it sponsor a request for compassionate release, or the passage of a specified period of time after seeking BOP's acquiescence, to move a court for relief. Previously, only BOP could initiate a motion for compassionate release. Lyle's request was denied by the BOP. Lyle asserts the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested this Court with the final authority to decide when "extraordinary and compelling circumstances warrant a sentence reduction."

The Government claims this position is inaccurate. It argues the First Step Act left unchanged a critical statutory command: any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Here, it suggests the applicable policy statement provides no basis for a sentence reduction based on concern regarding the length of a previously imposed sentence.

The Government contends that Congress has directed the Sentencing Commission to determine the permissible grounds for compassionate release. That directive is expressed in several statutes. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, section 994(t) states: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Finally, as stated, the Government argues that section 3582(c)(1)(A) conditions judicial relief to the confines of the applicable policy statement, which appears at U.S.S.G. § 1B1.13.

A few district courts have agreed with the proposition that a court may now, itself, define the circumstances that permit compassionate release, unfettered by the Commission's policy statement, but all present scant reasoning, and none addresses the extensive arguments presented here concerning the clear statutory language. Indeed, none recognizes or addresses the significance of the Supreme Court's *Dillon* decision in addressing this issue. *See United States v. Rodriguez*, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); *United States v. Brown*, 2019

WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); *United States v. Beck*, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *United States v. Cantu*, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019).

Neither the policy statements in the First Step Act nor the BOP regulations provide any basis for or against compassionate release based upon reevaluation of the severity of the original sentence. Accordingly, consistent with the statutory scheme, the grounds for compassionate release identified by the Commission are all based on inherently individual circumstances—health, age, and family responsibilities—and not the assessment of the propriety of sentencing penalties as applied to thousands of offenders. Thus, there is little authority for the remedy that Lyle seeks. *See United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (an assertion that the defendant's "sentence [was] too harsh, especially as compared to that of" other defendants, did "not even move the needle toward the extraordinary and compelling circumstances that must exist before the Court should grant compassionate release"; an "attempt to relitigate the propriety of her sentence under the auspice of 'compassionate release' . . . falls completely flat."); *but see United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) (the court reduced the penalties on two 924(c) counts from 300 months each to 60 months to reflect current law).

**IV. Discussion**

Section 3582(c)(1)(A)(ii) requires any sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The policy statement allows a reduction for "extraordinary and compelling

7

reasons," only if the reasons are "consistent with this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(1)(A), (3) (U.S. SENTENCING COMM'N 2018). Application Note 1 explains that "extraordinary and compelling reasons exist under any of the circumstances set forth below." *Id.* § 1B1.13 cmt. n.1. These circumstances are: (a) suffering from a terminal illness or other medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (b) being at least 65 years old and "experiencing a serious deterioration in physical or mental health because of the aging process" and having "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; (c) the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; or (d) "[a]s determined by the Director of the Bureau of Prisons, . . . an extraordinary and compelling reason other than, or in combination with, the [above] reasons." *Id.* § 1B1.13 cmt. n.1. Obviously, Lyle does not qualify under subparts a, b, or c.

Courts differ on whether Application Note 1 remained binding after Congress passed the First Step Act. *Compare United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."), *with United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (the district court did not err by considering § 1B1.13 commentary when determining whether an "extraordinary and compelling reason" existed that warranted a sentence reduction).

8

The final determination as to how these provisions are to be applied has left the courts with little guidance other than the actual language of the First Step statute and the intent behind it. Even these guideposts do not really provide the Court with any true reference points. For instance, without giving specifics, Senator Bill Nelson in supporting passage of the First Step Act stated:

> This legislation will allow judges to do the job that they were appointed to do—to use their discretion to craft an appropriate sentence to fit the crime.

164 Cong. Rec. S7737, S7756 (2018). Additionally, while more focused on the drug-related mandatory minimums, Senator Dick Durbin stated:

> Our bill would reduce Federal mandatory minimum sentences in a targeted way. We don't repeal any mandatory minimum sentences, and we won't lower any maximum sentences. We would simply allow Federal judges to determine in certain low-level cases, on a case-by-case basis, when the harshest penalties should apply.

164 Cong. Rec. S7627, S7645 (2018).

While this Court would not characterize any of the charges against Lyle as "low level," it is clear that Congress's overall intent was to reduce certain mandatory minimums and within the confines of those amendments leave their application to the discretion of the courts.

More specifically, with respect to § 924(c), the legislative history of the First Step Act also seems to counsel toward granting Lyle relief. During debate of the bill on the Senate floor, Senator Ben Cardin from Maryland explained that the bill would give judges more discretion in sentencing generally, and then elaborated:

> [T]he legislation eliminates the so-called stacking provision in the U.S. Code, which helps ensure that sentencing enhancements for repeat offenses apply only to true repeat offenders. *The legislation clarifies that sentencing enhancements cannot unfairly be "stacked," for example, by applying to conduct within the same indictment.*

164 Cong. Rec. S7737, S7774 (2018) (emphasis added).

9

Indeed, perhaps in reliance upon Senator Cardin's remarks, the United States Sentencing Commission has described the changes to § 924 as a "clarification"—implying that the current interpretation was what Congress intended all along.[2] This leaves the Court with opposing viewpoints of the application of the law. The overall tenor of the underlying principles of the First Step Act would counsel this Court to exercise its discretion in Lyle's favor. On the other hand, the Act itself clearly limited the retroactive application of the changes to § 924(c) to those individuals who were sentenced after the passage of the Act, which was December 21, 2018.

Similarly, the facts of this case present conflicting interpretations. The actual crimes committed by Lyle were both numerous and dangerous. He committed multiple armed robberies in which he terrorized the employees of various financial institutions. He not only displayed a firearm on each occasion, on one occasion he actually fired his weapon. On the other hand, Lyle had a comparatively minor criminal history at the time. He had two convictions for possession of 3.6 and 8.5 grams of marijuana and one for driving without a valid license. He was sentenced in conformance with the law in effect at the time to 1,141 months in jail—effectively 95 years in jail for an individual, albeit a convicted armed felon, who was at the time 38 years old. Had Lyle been sentenced for similar crimes today he would have still gotten a stiff sentence—493 months or roughly 41 years in custody.

Only a few courts have been faced with a similar situation. The case of *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019), presents, perhaps, the most similar facts. While Urkevich's underlying crimes were distribution of methamphetamine, his sentence for that drug trafficking crime was enhanced under § 924. Ultimately, he received a total sentence of 895 months. Under today's law, that sentence, like Lyle's, would be cut by more than 50% (368 months). That Court held:

---

[2] *United States Sentencing Commission ESD Insider Express*, Feb. 2019.

> If this Court reduces Urkevich's sentences on Counts III and V to 60 months each, consecutive, he will not be eligible for immediate release. His sentence would total 368 months, and he would have served somewhat more than half that sentence. Nonetheless, the Court does not consider the Motion premature. *A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.* A reduction in the sentence at this juncture will help Urkevich and the Bureau of Prisons plan for his ultimate release from custody and may assist him in his pending efforts to seek clemency from the Executive Branch. This Court will not intervene in that process.

*Id.* at *4 (emphasis added).

In *United States v. Brown*, 411 F. Supp. 3d 446 (S.D. Iowa 2019), the Court found that the defendant's motion, similar to Lyle's, based upon the receipt of an inordinately lengthy sentence before the First Step Act when compared with a more reasonable sentence pursuant to the Act, presented a compelling and extraordinary situation. Yet it found the motion to be premature, given the fact it would not lead to Brown's release. The Court wrote:

> As the First Step Act's title indicated, Congress acknowledged it has just begun to rein in its past excesses. In cases where it has not—perhaps out of fear it would take too much effort to make so many people whole—courts and those who appear before them should not hesitate to use their powers to right obvious wrongs.

*Id.* at 454.

The sentence imposed upon Lyle was not an obvious wrong from a judicial standpoint. The Court followed the law in effect at the time. Nevertheless, since that time, Congress has recognized that perhaps it either went too far or more likely that it never intended § 924(c) to be interpreted as it was. That being the case, the Court finds that there is no compelling reason not to grant Lyle's motion and there are many compelling factors in its favor.

> Very little guidance exists on what constitutes extraordinary and compelling reasons warranting a sentence reduction under U.S.S.G § 1B1.13 cmt. n.1(D)— only the BOP was previously empowered to seek such relief, and it rarely did so, *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 1472320, at *1

11

>(D.N.M. Apr. 3, 2019) (citations omitted). The statute "does [not] define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction." *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011). Black's Law Dictionary, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," Extraordinary, BLACK'S LAW DICTIONARY (10th ed. 2014), and extrapolating from its definition of "compelling need," a compelling reason is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]," *see* Compelling Need, BLACK'S LAW DICTIONARY (10th ed. 2014).

*United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019).

The Court finds the discrepancy of comparative sentences of 1,141 months vs. 491 months (95 years vs. 41 years) to be an extraordinary and compelling reason for granting relief, given that these sentences apply to the same crimes committed in the same manner. The robberies, if committed today, are no less heinous and certainly no less dangerous. The victims are no less terrorized and the perpetrator is no less culpable. This conclusion is bolstered by the fact that Congress made the relevant provisions of the First Step Act applicable to crimes which have been previously committed—just not to those who had previously been sentenced. Finally, the change to § 924(c) has been described as a "clarification"—indicating that the current method of calculating the § 924 enhancements was what was intended from its initial passage.

## V.     Conclusion

For the reasons expressed above, the Court grants Lyle's motion pursuant to the extraordinary and compelling standard set out above and reduces his sentence as follows. As before, he is sentenced to 121 months for Counts 1S, 3S, 5S, and 7S to run concurrently for a total of 121 months. He is sentenced to 120 months for Count 2S to run consecutive to Counts 1S, 3S, 5S, and 7S for a running total of 241 months. He is sentenced to 84 months for Count 4S to run consecutive to Counts 1S, 2S, 3S, 5S, and 7S for a running total of 325 months. He is sentenced to 84 months for Count 6S to run consecutive to Counts 1S, 2S, 3S, 4S, 5S, and 7S for

a running total of 409 months. He is sentenced to 84 months for Count 8S to run consecutive to Counts 1S, 2S, 3S, 4S, 5S, 6S, and 7S for a final total of 493 months. The remainder of the terms of the original judgment signed on October 17, 2003 shall remain the same.[3]

To summarize, the Court denies the Motion for Reduction in Sentence Pursuant to the First Step Act and for Appointment of Counsel (Doc. No. 112) as moot. It also denies the separately filed Motion for an Attorney (Doc. No. 121) as moot. To the extent that any pending motion can be read as a request for outright release, that motion is denied. Finally, the Court denies-in-part and grants-in-part Lyle's Motion to Reduce Sentence Under 18 U.S.C. § 3582 (c)(1) and the First Step Act (Doc. No. 113) and in doing so reduces his sentence from 1,141 months to the 493 months detailed above.

SIGNED at Houston, Texas this 9th day of December, 2020.

Andrew S. Hanen
United States District Judge

---

[3] Given the fact that the Court is not ordering the release of Lyle—only a reduction in sentence—it does not feel the need to address the 3553(a) factors pertaining to the protection of the public that many courts have discussed in similar situations.